UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>NETFA TRISTAN GAY,<br><br>Defendant. | 4:21-CR-40130-KES<br><br>REPORT AND RECOMMENDATION |

## INTRODUCTION

Defendant Netfa Tristan Gay is before the court on an indictment charging him with possession of a firearm by a prohibited person.  See Docket No. 1.  Mr. Gay has filed a motion to suppress the gun taken from his backpack on July 21, 2021.  See Docket No. 55.  The United States ("government") resists the motion.  See Docket No. 59.  This matter has been referred to this magistrate judge for holding an evidentiary hearing and recommending a disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 57.11.

## FACTS

An evidentiary hearing was held on September 1, 2022.  Mr. Gay was there in person along with his lawyers, Clint Sargent and Erin Willadsen.  The government was represented by its Special Assistant United States Attorney,

Elizabeth Ebert. One witness testified and two exhibits were received into evidence. From this testimony and these exhibits, the court makes the following findings of fact.

Officer Hector Soto is a 30-year veteran traffic officer. He was trained at the Rio Hondo Police Academy in California and served as a traffic officer for 10 years there. He then relocated to South Dakota and underwent further training to qualify as a certified law enforcement officer in this state. He has worked the last 20 years for the Sioux Falls (South Dakota) Police Department in the traffic section. His primary duties are to enforce traffic laws, investigate complaints and investigate accidents.

Officer Soto has specialized knowledge about the operation of motorcycles. He is the instructor for the Sioux Falls Police Department in training police officers how to operate motorcycles in the line of duty.

On July 21, 2021, at approximately 7:50 p.m., Officer Soto was on Franklin Street on the east side of Sioux Falls near the South Dakota State Department of Social Services ("DSS") building, which is adjacent to a local McDonald's restaurant. The DSS building and the restaurant share a joint parking lot.[1] After finishing writing a traffic citation in connection with an

---

[1] Mr. Gay's counsel repeatedly made reference to the location where Mr. Gay was operating his motorcycle to be "private property." Mr. Gay never introduced any evidence proving this was so. The parking lot was certainly accessible by the public and was being accessed by others during the pertinent time frame. Whether the lot was public or private property is ultimately not central to the court's analysis.

earlier stop, Officer Soto saw a man (who turned out to be Mr. Gay) operating a motorcycle in the DSS/McDonald's parking lot.

Officer Soto watched Mr. Gay perform quick accelerations; "burn outs" where the front wheel of the motorcycle remained in one place and Mr. Gay accelerated, causing the back wheel to move in a circular fashion around the pivot point of the front wheel, and "wheelies" where Mr. Gay rode the motorcycle with the front wheel in the air, balancing solely on the back wheel of the motorcycle. He captured part of what he observed on the dash cam video of his patrol vehicle. See Exhibit 1 at 0:00 to 1:33 (Officer Soto's dash cam video).[2] There was a man wearing a yellow McDonald's uniform who was video recording Mr. Gay's antics. Id. Other passenger vehicles were also passing through the joint parking lot. Id.

Officer Soto believed Mr. Gay was driving recklessly in violation of a City of Sioux Falls ordinance. He testified that Mr. Gay's driving could result in danger or injury to others who traversed the parking lot. He called into dispatch, gave his location, and described what he was seeing, telling them he intended to approach the motorcyclist. See Exhibit 2 at 19:49:55 to 19:51:01 (Officer Soto's body cam).[3] Officer Soto asked that backup units be sent to his location. Id.

---

[2] Exhibit 1 does not show chronological real time; it shows the amount of time that is elapsing on the video recording itself. Exhibit 1 has no audio, but Exhibit 2 does.

[3] Exhibit 2 shows the chronological time at which the events depicted took place, i.e., 19:49 is 7:49 p.m.

Officer Soto saw Mr. Gay stop his motorcycle and confer with the man in the McDonald's uniform. The two men appeared to be watching the video created on the McDonald man's cell phone. Officer Soto determined to approach Mr. Gay to investigate. Because Officer Soto had experienced persons on motorcycles who attempted to drive away from traffic stops, Officer Soto determined to approach Mr. Gay and stop him in a way that prevented his escape.

To that end, Officer Soto drove up behind Mr. Gay and parked his patrol vehicle in front of the front wheel of Mr. Gay's motorcycle. Id. at 1:33 to 2:11. As Officer Soto explained, engines on motorcycles can only propel the bike forward, not backward. Therefore, by blocking the forward progress of Mr. Gay's motorcycle, Officer Soto hoped to prevent Mr. Gay's escape. When Officer Soto first approached, Mr. Gay's motorcycle was turned off.

Officer Soto exited the driver's side door of his patrol vehicle, walked around the back end of that vehicle, and approached Mr. Gay. See Exhibit 2 at 19:51:57 to 19:52:04. Mr. Gay started his motorcycle and walked it back in an arc while sitting astride the cycle. See Exhibit 1 at 2:20 to 2:24. As Officer Soto approached, he called to Mr. Gay "don't take off on me man." See Exhibit 2 at 19:52:04. Officer Soto said, "let me see your license, let me see your license." Id. at 19:52:07. He told Mr. Gay to turn off his engine. Id. at 19:52:08.

Mr. Gay then engaged the motorcycle's engine and struck Officer Soto while moving forward. Id.; Exhibit 1 at 2:24 to 2:26. This caused Officer Soto

4

to topple over to his left on top of the motorcycle, which also toppled. See Exhibit 1 at 2:24 to 2:26; Exhibit 2 at 19:52:08. Mr. Gay remained standing astride the bike, while Officer Soto was lying nearly prone on his stomach/side as Mr. Gay stood over him. See Exhibit 1 at 2:25. The man in the McDonald's uniform can be seen leaving the scene, heading toward the McDonald's restaurant, observing the events over his right shoulder. Id.

Officer Soto testified that, for Mr. Gay's motorcycle to strike him, Mr. Gay had to perform at least four sequential steps: start the engine, release the brake, release the clutch, and simultaneously twist the throttle handle. Officer Soto testified that because of the number and sequence of actions required for Mr. Gay to strike him with his motorcycle, he believed Mr. Gay's actions were intentional.

Immediately after Officer Soto was struck, he regained his feet, punched Mr. Gay, and then shoved him backward with both palms to create space between himself and the man who had just struck him with a motorcycle. Officer Soto testified these actions were a matter of officer safety. Due to Mr. Gay's striking Officer Soto with his motorcycle, Officer Soto sustained bruises, cuts, and abrasions to his leg, forearm, and head.

Officer Soto commanded Mr. Gay to get on the ground and told him he was under arrest. Mr. Gay did not follow Officer Soto's repeated commands and Officer Soto readied his taser. When he threatened to tase Mr. Gay, Mr. Gay eventually—arguing all the while—got on the ground.

5

Mr. Gay was wearing a backpack on his back.  When he finally got on the ground, Officer Soto removed the backpack and tossed it several feet away where it would be out of Mr. Gay's reach.  Officer Soto then handcuffed Mr. Gay and placed him in the back of a patrol vehicle.  At about this time backup police units arrived.

Another officer was holding the backpack and asked, "this was on him?" See Exhibit 2 at 19:56:08.  Officer Soto said it was.  Id. at 19:56:09.  The other officer then asked, "did you go through it?"  Id. at 19:56:10-11.  Officer Soto said, "nope."  Id. at 19:56:11.

The officer then placed Mr. Gay's backpack on the hood of Officer Soto's patrol vehicle and proceeded to search it.  Id. at 19:56:18 to :36.  Found inside was the handgun which forms the basis of the charge in this matter.  Id. at 19:56:36.  This search occurred without a search warrant and without Mr. Gay's consent.  The gun was bagged and placed into evidence.  It did not accompany Mr. Gay's other belongings in the backpack to the jail.

Officer Soto testified that the search of Mr. Gay's backpack was done according to official Sioux Falls Police Department inventory policy.  Because Mr. Gay was wearing the backpack at the time of his arrest, the backpack would accompany Mr. Gay to the jail and be inventoried there just like any other personal property on an arrestee's person at the time of his arrest. Officer Soto testified that police department policy prohibits the bringing of firearms or contraband into the booking area, so items to be inventoried must first be examined for these items before they are brought into booking.  Officer

Soto testified that even police officers must check their firearms into a secure area before entering the booking area at the jail—even officers cannot bring guns into the booking area. It is considered a safety hazard to have dangerous items or contraband inside the small, enclosed environs of the booking area.

Officer Soto testified that once dangerous items or contraband are removed from an arrestee's person and personal effects, those items are inventoried at the jail and a written record of them is created to prevent later claims of loss or damage. The firearm from Mr. Gay's backpack was not on the written inventory of his personal property created at booking because that item had been previously removed and placed into evidence.

Mr. Gay now moves to suppress the firearm under the Fourth Amendment. Docket No. 55. He asserts that Officer Soto unlawfully seized him when he approached him in the parking lot without reasonable suspicion or probable cause. Docket No. 56, pp. 5-9. He also argues the warrantless search of his backpack was unlawful. Id. at 9. The government asserts Officer Soto had reasonable suspicion to approach Mr. Gay because he reasonably believed Mr. Gay was violating the city's reckless driving ordinance. Docket No. 59, p. 4. The government further asserts that the search of Mr. Gay's backpack was justified under the inventory exception to the warrant requirement and/or the inevitable discovery doctrine. Id. at 7.

**DISCUSSION**

**A.   Was There Reasonable Suspicion for Officer Soto to Stop Mr. Gay**

Mr. Gay alleges Officer Soto's stop violated his Fourth Amendment rights. The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.  A traffic stop constitutes a seizure under the Fourth Amendment. United States v. Fuse, 391 F.3d 924, 927 (8th Cir. 2004) (quoting United States v. Martinez, 358 F.3d 1005, 1009 (8th Cir. 2004) (citing Delaware v. Prouse, 440 U.S. 648, 653 (1979))).

A traffic stop may be lawfully made under two circumstances.  If there is probable cause to stop the vehicle, such a stop is lawful. United States v. Sallis, 507 F.3d 646, 649 (8th Cir. 2007) (quoting United States v. Coney, 456 F.3d 850, 855-856 (8th Cir. 2006) (quoting United States v. Linkous, 285 F.3d 716, 719 (8th Cir. 2002))).  Also, if there is reasonable suspicion to stop the vehicle, the stop complies with the Fourth Amendment. Navarette v. California, 572 U.S. 393, 397 (2014); United States v. Spotts, 275 F.3d 714, 718 (8th Cir. 2002); United States v. Bell, 183 F.3d 746, 749 (8th Cir. 1999).

Probable cause exists where the totality of the facts and circumstances are sufficient to lead a reasonable person to believe that the defendant has committed a crime. Beck v. Ohio, 379 U.S. 89, 91 (1964).  There need only be "a probability or substantial chance of criminal activity, rather than an actual showing of criminal activity." United States v. Torres-Lona, 491 F.3d 750,

8

755-56 (8th Cir. 2007) (quotation omitted).  There must be evidence which would "warrant a man of reasonable caution in the belief" that a crime has been committed.  Wong Sun v. United States, 371 U.S. 471, 479 (1963) (quotation omitted).

"For purposes of constitutional analysis, a traffic stop is characterized as an investigative detention, rather than a custodial arrest.  Berkemer v. McCarty, 468 U.S. 420, 439 . . . (1984).  As such, a traffic stop is governed by the principles of Terry v. Ohio, 392 U.S. 1 . . . (1968)."  United States v. Jones, 269 F.3d 919, 924 (8th Cir. 2001).

The constitutional analysis under Terry is two-part: (1) "whether the officer's action was justified at its inception," and (2) "whether it was reasonably related in scope to the circumstances which justified the interference in the first place."  Terry v. Ohio, 392 U.S. 1, 20 (1968).  Thus, a traffic stop that is "lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes . . . interests protected by the Fourth Amendment[.]"  United States v. Jacobsen, 466 U.S. 109, 124 (1984).

Relying on state law definitions of "criminal proceedings," Mr. Gay argues that his driving in the McDonald's parking lot did not violate a state statute (SDCL § 32-24-1)[4], only potentially a city ordinance (Sioux Falls, SD, Code of

---

[4] Under the state statute, a private parking lot is not among the locations listed for a violation of law.  See SDCL § 32-24-1.  Reckless driving under the state statute is proscribed only on highways, alleys, public parks, recreational areas, and school/university/college property.  Id.

9

Ordinances § 76.075 (1992)).  Because violation of a city ordinance is not defined as a "criminal proceeding" under South Dakota state law (SDCL § 23A-45-1)[5], Mr. Gay argues that his actions did not present any possibility that criminal activity was afoot.  Therefore, he argues, Officer Soto had no lawful reason to approach him.  In other words, Mr. Gay asserts that in South Dakota, police officers are not allowed to conduct a Terry stop unless there is reason to believe a state statute is being violated.  He would have this court hold that a Terry stop cannot be predicated upon violation of a city ordinance.  This is simply not the law.

    Quite clearly police can have reasonable suspicion which allows them to conduct a Terry stop even if the only law they believe is being broken is a city ordinance.  In United States v. Banks, 553 F.3d 1101, 1103 (8th Cir. 2009), police approached Banks because he was riding his bicycle at night without a headlamp, in violation of Minneapolis city ordinances.  A pat-down search of Banks revealed a gun and Banks was subsequently charged in federal court with being a felon in possession of a firearm.  Id.

    Banks argued that his seizure by police pursuant to Terry for a petty misdemeanor violated his rights under the Fourth Amendment.  Id. at 1104.  The Eighth Circuit rejected this argument, holding that the officer's

---

[5] SDCL § 23A-45-1 states: "A criminal proceeding is one prosecuted by the state as a party, against a person charged with a criminal offense for the punishment thereof.  A proceeding for the violation of an ordinance, bylaw, or police regulation is one prosecuted by a unit of local government as a party, against a person charged with a public offense, for the punishment thereof."

observations of Banks' violation of city ordinance provided reasonable suspicion for a Terry stop even though, under Minnesota law, no custodial arrest was authorized for violating the bicycle ordinance.  Id.

Mr. Gay next argues that the motorcycle tricks and stunts he was performing were not "reckless driving."  To the contrary, he argues, the maneuvers he performed that day took great skill.  This is the very antithesis of "reckless driving" he argues.

Sioux Falls City Ordinance § 76.075 (1992) provides that "any person who drives a vehicle within the limits of the city carelessly or heedlessly or in disregard of the rights or safety of others, or without due caution and circumspection, or at a speed or in a manner so as to endanger or be likely to endanger any person or property, shall be guilty of reckless driving."  Officer Soto testified that Mr. Gay's operation of his motorcycle by performing burn outs, wheelies, and fast accelerations posed a hazard to other persons and vehicles passing through the parking lot.  The court agrees.

The ordinance makes it unlawful to operate a motor vehicle "in disregard of the . . . safety of others, or without due caution and circumspection, or at a speed or in a manner so as to endanger or be likely to endanger any person."  SF City Ord. § 76.075.  The dashcam video, Exhibit 1, certainly demonstrates that Mr. Gay was driving in an unsafe manner that posed a danger to anyone nearby.

Mr. Gay argues that no one was in fact injured and Mr. Gay never lost control of his motorcycle.  But the reckless driving ordinance does not require

11

police to wait until someone is hurt before arresting someone for reckless driving. The court finds that Officer Soto's traffic stop of Mr. Gay was lawful under the Fourth Amendment because it was supported by reasonable suspicion and probable cause.

Of course, once Mr. Gay assaulted Officer Soto with his motorcycle, he provided grounds for a warrantless arrest for assaulting an officer. It was at this point that it was inevitable that Mr. Gay would be taken into custody and booked into the jail. Which leads to the next issue: whether the search of Mr. Gay's backpack violated the Fourth Amendment.

**B.     Whether the Search of Mr. Gay's Backpack Violated the Fourth Amendment**

Mr. Gay was arrested for aggravated assault of a law enforcement officer. As part of that arrest, his backpack was searched without a warrant and without his consent. Mr. Gay asserts this warrantless search violated his Fourth Amendment rights. Docket No. 56. Where a warrantless search occurs, the burden is on the government to show by a preponderance of the evidence that an exception to the warrant requirement applies. Coolidge v. New Hampshire, 403 U.S. 443, 454-55 (1971); United States v. Kennedy, 427 F.3d 1136, 1140 (8th Cir. 2005).

When a suspect is arrested and booked into a jail, police have a right to conduct an inventory of all possessions on the person of the suspect as part of the booking process. Illinois v. Lafayette, 462 U.S. 640, 646 (1983). "Examining 'all the items removed from the arrestee's person or possession and listing or inventorying them is an entirely reasonable administrative

12

procedure.'" United States v. Allen, 713 F.3d 382, 388 (8th Cir. 2013) (quoting Lafayette, 462 U.S. at 646). Inventory searches do not rest upon a finding of probable cause and do not implicate the Fourth Amendment's warrant requirement. United States v. Rabenberg, 766 F.2d 355, 357 (8th Cir. 1985).

In Lafayette, the suspect was arrested for disturbing the peace, handcuffed, and taken to the police station. Id. at 641. At the station, the suspect's person and his shoulder bag, which he wore on his person, were searched for inventorying as part of the booking process. Id. at 642. Illegal drugs were found in the bag and the suspect was charged with possession of illegal controlled substances. Id.

The Court held such inventory searches are a "well-defined exception to the warrant requirement." Id. at 643. "At the stationhouse, it is entirely proper for police to remove and list or inventory property found on the person or in the possession of an arrested person who is to be jailed." Id. at 646. The inventory search attendant to the booking process protects police against later claims that items were stolen and prevents the injury of persons who must encounter the property while it is stored. Id.

The inventory search in connection with booking a suspect into jail is also supported by the government's need to identify the suspect. Maryland v. King, 569 U.S. 435, 450-52 (2013). This inventorying "is an entirely reasonable administrative procedure" and it makes no difference whether the police subjectively had any concerns about an arrestee's personal property. Lafayette 462 U.S. at 646. See also United States v. Smith, 715 F.3d 1110, 1117-18 (8th

13

Cir. 2013) (police properly seized and inventoried the contents of suspect's laptop bag pursuant to the inventory exception when the bag was in the suspect's possession at the time he was arrested and brought to the jail for booking); United States v. Caves, 890 F.2d 87, 95 (8th Cir. 1989) (search of arrestee's purse pursuant to inventory search policy did not violate the Fourth Amendment).

The Lafayette case is nearly on "all fours" with Mr. Gay's case. Both defendants were arrested and, at the time of their arrest, were wearing a bag on their bodies—Mr. Gay's bag was a backpack and Lafayette's bag was a shoulder bag. Both bags were searched pursuant to a routine, established police inventory policy. The Lafayette Court held the search of the shoulder bag in that case was justified as an inventory search. It follows that the search of Mr. Gay's backpack in this case was justified on the same grounds.

At the hearing, Mr. Gay's counsel suggested through cross-examination that Officer Soto could easily have applied for a telephone search warrant before searching Mr. Gay's backpack. But counsel's own line of questioning puts the lie to that issue. A search warrant must be supported by probable cause. Officer Soto testified in response to defense counsel's questions that he had no reason to expect that the backpack contained anything dangerous or illegal. What facts would a search warrant have set forth which would have established probable cause for the search? There was nothing. Officer Soto had no suspicions about the contents of the backpack.

The backpack was searched solely pursuant to the routine inventory procedure of the Sioux Falls Police Department. That policy, as testified to by Officer Soto, required arresting officers to make sure before bringing an arrestee's personal effects into the booking area that those personal effects did not contain anything dangerous or illegal. The court concludes that the warrantless search of Mr. Gay's backpack was justified under the exception to the warrant requirement for inventory searches.

The court notes that police could not very well leave the backpack in the parking lot. Mr. Gay's associate at the scene had abandoned him and was not available to hand the backpack over to. When it is not feasible for police to simply leave an arrestee's personal property on the street, an inventory search is justified. United States v. Allen, 713 F.3d 382, 387-88 (8th Cir. 2013).

The government also asserts that the search of Mr. Gay's backpack was justified under the inevitable discovery doctrine. Here, Mr. Gay was placed under arrest and booked at the jail, but his backpack was searched at the McDonald's parking lot rather than at the police station. The Eighth Circuit has approved of inventory searches that occur before an arrestee is transferred for formal booking, stating that the fact the search took place before booking "is not dispositive as long as routine procedure was being followed." United States v. Woolbright, 831 F.2d 1390, 1394 (8th Cir. 1987). Therefore, even though officers searched Mr. Gay's backpack in the parking lot rather than at the booking location does not defeat application of the inventory search exception so long as the search was done according to routine procedure.

15

Officer Soto testified the search was done pursuant to official procedure. Mr. Gay introduced no evidence to discredit this testimony.

Nevertheless, the government is correct. If Mr. Gay's backpack had not been searched by police in the parking lot, it would have been searched when Mr. Gay was booked into the jail and its contents would have been discovered then. United States v. Trogdon, 2022 WL 2093858 *2 (8th Cir. June 9, 2022) (unpublished) (holding shoplifter's backpack would have inevitably been searched when she was booked into the jail, so earlier search of the backpack at the shopping mall was covered by the inevitable discovery doctrine). See also Nix v. Williams, 467 U.S. 431, 444, n.5 (1984) (holding proof of inevitable discovery of illegally seized evidence must be shown by the government to have been more likely than not). The court finds the inevitable discovery doctrine applies to the search of Mr. Gay's backpack as well. Thus, the court finds no Fourth Amendment violation arising out of the search of Mr. Gay's backpack.

## CONCLUSION

Based on the foregoing facts, law and analysis, this magistrate judge respectfully recommends denying Mr. Gay's motion to suppress [Docket No. 55] in its entirety.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact.

Objections must be timely and specific to require *de novo* review by the district court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED September 2, 2022.

BY THE COURT:

_____
VERONICA L. DUFFY
United States Magistrate Judge