UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>NETFA TRISTAN GAY,<br><br>    Defendant. | 4:21-CR-40130-KES<br><br>ORDER ADOPTING REPORT AND RECOMMENDATION AS MODIFIED AND DENYING GAY'S MOTION TO SUPPRESS |

  The Government charged defendant, Nefta Tristan Gay, with one count of Possession of a Firearm by a Prohibited Person in violation of 18 U.S.C. § 922(g)(1). Docket 1. Gay moves to suppress the firearm that officers found in his backpack on July 21, 2021 on the grounds that the officers' warrantless search of his backpack violated his Fourth Amendment rights. Docket 55 at 1.

  The court referred Gay's motion to Magistrate Judge Veronica L. Duffy under 28 U.S.C. § 636(b)(1)(B). After holding an evidentiary hearing, Magistrate Judge Duffy recommended Gay's motion to suppress be denied. Docket 62. Gay filed objections to the Report and Recommendation. Docket 63. After a de novo review of the Report and Recommendation and a review of the record, the court adopts the Report and Recommendation as modified below and denies Gay's motion to suppress.

## LEGAL STANDARD

  This court's review of a magistrate judge's report and recommendation is governed by 28 U.S.C. § 636 and Rule 59 of the Federal Rules of Criminal Procedure. The court reviews de novo any objections to the magistrate judge's

recommendations with respect to dispositive matters that are timely made and specific. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b). Because motions to suppress evidence are considered dispositive matters, a magistrate judge's recommendation regarding such a motion is subject to de novo review. 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667, 673 (1980). In conducting a de novo review, this court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also United States v. Craft*, 30 F.3d 1044, 1045 (8th Cir. 1994).

## FACTS

After reviewing the transcripts of the suppression hearing and the exhibits received into evidence, the court makes the following pertinent factual findings necessary to resolve this dispute:

On July 21, 2021, Officer Soto observed Gay performing wheelies and burnouts on a motorcycle in a parking lot right next to a McDonald's restaurant. *See* Docket 67 at 8. A McDonald's employee watched Gay and filmed him performing these tricks. *See id.* at 9. At the time Gay performed the tricks, there was a white car in the parking lot. *See* Exhibit 1 at :16-1:37.[1] The white car eventually drove off. *See id.* A red car also drove near Gay after leaving McDonald's drive thru. *See id.* McDonald's was open at this time. *See* Docket 67 at 9.

Officer Soto drove his police patrol vehicle and approached Gay from behind so that Gay would not notice him and try to escape. *See id.* at 10. Officer Soto then pulled his car around in front of Gay to prevent Gay from escaping. *See id.*; Exhibit 1 at 2:00-2:11. Officer Soto left the vehicle and ran towards Gay. Exhibit 2 at 2:10-

---

[1] Exhibit 1 is footage from Officer Soto's patrol vehicle.

2:18.² Gay, still on his motorcycle and wearing a backpack, began to back up and turn his wheel away from Officer Soto. *See id.* Officer Soto testified at the suppression hearing that he was worried, based off his experience, that Gay would escape because motorcyclists can only drive forward, and backing up gave Gay room to escape. *See* Docket 67 at 17-18. Officer Soto then said, "Don't take off on me man. Let me see your license, let me see your license. Turn it off." *See* Exhibit 2 at 2:10-2:22. Gay did not comply. *See id.*

Gay then ran his motorcycle into Officer Soto. *See* Exhibit 1 at 2:20-2:25. Officer Soto fell down on top of the bicycle, and then punched Gay in the face. *See id.* at 2:24-2:30. Officer Soto repeatedly ordered Gay to get on the ground. *See* Exhibit 2 at 2:25-3:06. Gay eventually complied. *See id.* at 2:56-3:09. Officer Soto then told Gay to take off his backpack. *See id.* at 3:07-3:14. Officer Soto put the backpack to the side. *See id.*; Exhibit 1 at 3:15-3:20. Afterwards, Officer Soto placed Gay in handcuffs. *See* Exhibit 1 at 3:33-3:47.

A few minutes later, backup officers arrived on scene, and walked Gay over to the back of a patrol vehicle. *See id.* at 6:20-6:45. An unknown officer, after learning Officer Soto had taken Gay's bag, asked Officer Soto if he had "gone through it," and Officer Soto replied, "No." *See* Exhibit 2 at 6:19-6:25. The unknown officer started to look through Gay's bag on scene. *See id.* at 6:33-8:00. Officer Soto testified that it is standard procedure to conduct an inventory search of items found on arrested persons in public at the scene for officer safety. *See* Docket 67 at 23, 28-29. He testified that they conduct routine inventory searches to prevent anything illegal or dangerous entering into the jail. *See id.* at 23, 29.

---

² Exhibit 2 is Officer Soto's body camera footage.

3

The unknown officer found a firearm—the firearm Gay seeks to suppress—in the bag. *See* Exhibit 2 at 7:20-7:30.

Later, another unknown officer separated the firearm from the rest of Gay's items in the backpack. *See* Exhibit 1 at 11:05-12:01. Officer Soto left the scene with Gay's bag to bring it to Gay's location. *See* Exhibit 2 at 20:30-20:41; Docket 67 at 14-15, 24-25. Officer Soto testified that once items are in the jailhouse, the jail fills out a list and itemized form of all of the items that belong to the defendant. *See id.* at 23-24.

At the suppression hearing before Magistrate Judge Duffy, Officer Soto testified that he had over 30 years of experience in traffic patrol. *See id.* at 21. He testified that he has special expertise in motorcycles and leads several trainings within the police department for officers wishing to gain the necessary training to ride a motorcycle while on patrol. *See id.* at 6-7. He also testified that wheelies and burnouts are "improper" ways to ride a motorcycle. *See id.* at 8-9.

## DISCUSSION

Gay makes 17 objections to the Report and Recommendation. Docket 63. The court addresses each of them as they come up in the below analysis.

### I.   Traffic Stop

The court first considers whether Officer Soto properly initiated a traffic stop of Gay. "A traffic stop for a suspected violation of law is a 'seizure' of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth Amendment." *Heien v. North Carolina*, 574 U.S. 54, 60 (2014) (citing *Brendlin v. California*, 551 U.S. 249, 255-59 (2007)). To justify a traffic stop, officers need only

have reasonable suspicion that the person they are stopping is breaking the law. *Navarette v. California*, 572 U.S. 393, 397 (2014). Reasonable suspicion is "a particularized and objective basis for suspecting the particular person stopped" has violated the law. *Id.* at 396. "[T]he Fourth Amendment only requires that police articulate some minimal, objective justification for an investigatory stop." *United States v. Tamayo-Baez*, 820 F.3d 308, 312 (8th Cir. 2016). Courts "assess whether a law enforcement official had reasonable suspicion of criminal activity based on the totality of the circumstances." *United States v. Mosely*, 878 F.3d 246, 251 (8th Cir. 2017).

Gay first argues that Officer Soto lacked reasonable suspicion to conduct a traffic stop. *See* Docket 63 at 7. He objects to the Report's findings that "[o]ther passenger vehicles were also passing through the joint parking lot." *Id.* at 1 (quoting Docket 62 at 3). He also objects to the Report's conclusion that "Mr. Gay's driving could result in danger or injury to others who traversed the parking lot[,]" arguing that he was "successfully completing motorcycle tricks in the parking lot," and was "well aware of where the vehicles were in connection to where he was riding." *Id.* at 2 (citation omitted). In his initial motion to suppress, he notes that the motorcycle tricks he performed required "diligent skill, caution, and precise attention to detail[.]" Docket 56 at 5. Thus, Gay concludes Officer Soto's belief that Gay was driving recklessly in violation of a City of Sioux Falls ordinance[3] was

---

[3] Initially, Gay argued that because his actions "did not constitute a crime under South Dakota law[,]" and because violating a city ordinance is not a crime under state law, officers necessarily "had no objective manifestation to amount to reasonable suspicion to believe that criminal activity may have been afoot." Docket 56 at 6-7. The Report rejected this argument, and Gay did not object. *See* Docket 62 at 10; Docket 63. The court agrees with the Report: the Eighth Circuit has held that "*any* traffic violation, regardless of its perceived severity, provides an officer

5

"unreasonable." Docket 63 at 2, 6, 9.

Sioux Falls City Ordinance § 76.075 prohibits reckless driving. The ordinance provides:

> Any person who drives a vehicle within the limits of the city carelessly or heedlessly or in disregard of the rights or safety of others, or without due caution and circumspection, or at a speed or in a manner so as to endanger or be likely to endanger any person or property, shall be guilty of reckless driving.

SIOUX FALLS, SD., CODE OF ORDINANCES, SD TITLE VII, § 76.075. The court first turns to Officer Soto's dash camera footage. The footage shows a white car in the parking lot, which appears to be still at the time Gay performed his tricks, but eventually drives off. *See* Exhibit 1 at :16-1:37. A red car also drove near Gay after leaving McDonald's drive thru. *See id.* Because of these two cars, which Gay acknowledges in his objection, the court overrules his first objection. *See* Docket 63 at 1, 2.

The court also overrules his second, third, twelfth and fourteenth objections because officers could reasonably believe that the "manner" of Gay's driving was "likely to endanger any person or property." Sioux Falls, SD., CODE OF ORDINANCES, SD TITLE VII, § 76.075. Officer Soto testified the tricks Gay performed—wheelies and burnouts—were improper ways to operate a motorcycle. Docket 67 at 8-9. The parking lot where Gay performed the tricks had a McDonald's restaurant immediately adjacent, and Officer Soto testified that the McDonald's restaurant was open at the time. *See* Exhibit 1 at 2:10; Docket 67 at 9. Indeed, one of the McDonald's employees stood right by Gay and filmed Gay performing the tricks.

---

with probable cause to stop the driver." *United States v. Jones*, 275 F.3d 673, 680 (8th Cir. 2001). Violations of city ordinances provide sufficient basis for an officer to make a traffic stop. *See, e.g., United States v. Coleman*, 603 F.3d 496, 499 (8th Cir. 2010). Thus, Sioux Falls City Ordinance § 76.075 may justify Officer Soto's traffic stop.

6

*See* Exhibit 1 at 2:02 (showing McDonald's employee talking with Gay); Docket 67 at 9. New customers or other drivers could easily drive in the parking lot where Gay was, and Officer Soto testified that recklessly driven motorcycles can go out of control at any time. Docket 67 at 20. To the extent Gay argues that the lack of other cars or pedestrians around him shows that he did not pose a risk, the court rejects that reasoning because other members of the public were just as entitled to use the parking lot as Gay. These facts together show that a reasonable officer could suspect that Gay's driving was "likely to endanger any person or property."

Further, the Supreme Court has made clear that the touchstone for Fourth Amendment analysis is whether the officer acted reasonably. *See Riley v. California*, 573 U.S. 373, 381 (2014). Following this principle, the Supreme Court held that an officer's mistake of law, so long as the mistake is reasonable, can still provide sufficient basis for reasonable suspicion necessary for a traffic stop. *See Heien*, 574 U.S. at 61. The same goes for mistakes of fact. *See, e.g., Illinois v. Rodriguez*, 497 U.S. 177 (1990) (allowing warrantless search of a home if officers obtain consent of someone who reasonably appears but is not in fact a resident). Thus, even if Officer Soto was wrong about whether Gay's motorcycle tricks were illegal or whether he posed a likely danger to others, the court finds that at the time, given the totality of circumstances, he had reasonable suspicion to believe Gay violated the city ordinance. Thus, he had reasonable suspicion to conduct a traffic stop on Gay.

Gay also objects to the Report's statement that "[b]ut the reckless driving ordinance does not require police to wait until someone is hurt before arresting someone for reckless driving[,]" because a "[v]iolation of the City Ordinance for

7

reckless driving results in the issuance of a POA ticket, not an arrest." *See* Docket 63 at 6 (quoting Docket 62 at 11, 12). Whether the Sioux Falls Ordinance § 76.075 allows only for a ticket or instead authorizes an arrest is irrelevant: even if § 76.075 did not allow for arrests, that does not change the fact that officers can make a traffic stop based on reasonable suspicion. *See United States v. Banks*, 553 F.3d 1101, 1104-05 (8th Cir. 2009). The court overrules Gay's thirteenth objection.

## II.   Arrest

The court next turns to the events leading to Gay's arrest. Gay argues that officers lacked sufficient grounds for a warrantless arrest. Docket 63 at 7. He makes a series of factually based objections that relate to this argument. He objects to the Report's finding that Gay's motorcycle was turned off when Officer Soto first approached him. *See id.* at 3. He also objects to the Report's finding that Gay intentionally struck Officer Soto with his motorcycle. *See id.* at 4-5. He argues that his motorcycle "lurched forward slightly" because he removed his hand from the clutch, and that contrary to what the Report found, he did not pull the throttle. *See id.* Rather, Gay argues that Officer Soto was responsible for Gay's motorcycle moving forward because Officer Soto "grabb[ed] Mr. Gay's left hand and push[ed] the handlebars downward, which caused Mr. Gay's left hand to release the clutch." *See id.* at 4. Relatedly, Gay argues that Officer Soto caused his own injuries because "Officer Soto was actively advancing towards the bike at the same time" that Gay's "bike lurched forward slightly." *Id.* at 5.

The court first rejects Gay's suggestion that Officer Soto caused the motorcycle to move forward. The dashboard camera footage shows that Gay's motorcycle started to move forward *before* Officer Soto made contact with Gay's

vehicle or his person. *See* Exhibit 2:20-2:25. And the footage shows Gay's motorcycle making contact with Officer Soto's left leg. *See id.* As such, Gay—and not Officer Soto—caused his motorcycle to hit Officer Soto. And even if Gay did not intentionally hit Officer Soto, Officer Soto still had probable cause to believe that Gay had assaulted him or was trying to escape. When Officer Soto approached Gay's motorcycle, Gay turned his front wheel away from Officer Soto and slowly backed up. *See* Exhibit 1 at 2:20-2:25. Officer Soto testified that based on his experience, several people in Gay's identical position had attempted to escape in the past. Thus, because Officer Soto had probable cause to arrest Gay, the arrest was proper under the Fourth Amendment. *See Anderson v. Cass County, Mo.*, 367 F.3d 741, 745 (8th Cir. 2004). The court overrules Gay's fourth, fifth, sixth, seventh, eighth, tenth, and fifteenth objections either because they are moot or because the court, for the above reasons, finds otherwise.

Gay also makes two other objections, neither on which the court needs to reach the merits. Gay objects to the Report's conclusion that Officer Soto punched Gay "to create space." *See id.* at 5. And Gay objects to the timing of when backup police officers arrive relative to when they place Gay in the backseat of a patrol car. *See id.* As stated above, the court finds that Officer Soto both had probable cause to arrest Gay and thus Gay's arrest did not violate the Fourth Amendment. Thus, because neither of these objections undermine the legitimacy of such arrest, the court overrules objections ten and eleven as moot.

### III.   Inventory Search

Having found Officer Soto initiated a traffic stop and arrested Gay consistent with the Fourth Amendment, the court now addresses the officers' search of Gay's

9

backpack. Gay objects to the Report's conclusion that the inventory search exception justifies the officers' search of Gay's backpack. *See* Docket 63 at 6, 8. "Inventory searches are one exception to the general rule that searches conducted without a warrant are unreasonable." *United States v. Smith*, 715 F.3d 1110, 1117 (8th Cir. 2013); *see also Illinois v. Lafayette*, 462 U.S. 640, 643 (1983). The purpose of an inventory search is to protect the "owner's property while it remains in police custody," as well as to protect "police against claims or disputes over lost or stolen property" and "from potential danger[s]." *Smith*, 715 F.3d at 1117 (quoting *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976)). An inventory search "may not be a ruse for general rummaging in order to discover incriminating evidence." *United States v. Taylor*, 636 F.3d 461, 464 (8th Cir. 2011) (internal quotation omitted). Instead, officers must conduct the search in accordance with a standard and established routine. *See Florida v. Wells*, 495 U.S. 1, 4 (1990).

      Here, Officer Soto testified that it is standard procedure to conduct an inventory search of items found on arrested persons in public at the scene for officer safety. *See* Docket 67 at 23, 28-29. He testified that they conduct routine inventory searches to prevent anything illegal or dangerous from entering the jail. *See id.* at 23, 29. An unknown officer, after learning Officer Soto had taken Gay's bag, asked Officer Soto if he had "gone through it," and Officer Soto replied, "No." *See* Exhibit 2 at 6:19-6:25.

      While it would have been preferable if the government submitted a physical copy of the police department's inventory procedure, that is not required under Eighth Circuit precedent. *See United States v. Kimhon Thi Li*, 474 F.3d 511, 515

(8th Cir. 2007) (finding oral testimony about standard practice of police protocol to be sufficient); *United States v. Betterton*, 417 F.3d 826, 830 ("While a written policy may be preferable, testimony can be sufficient to establish police impoundment procedures."). The court credits Officer Soto's testimony and finds the search to be a proper inventory search.

Gay argues that the fact that the officers conducted this search in public—as opposed to the stationhouse—invalidates such an inventory search because an on the scene search is "more akin to an unlawful search incident to arrest that the Government is attempting to disguise as a routine inventory procedure[.]" *See* Docket 63 at 8. Gay further points out that a "second inventory search would have been completed at the stationhouse," and thus "[t]he Government should not get two bites at the apple for an inventory search, conducting one in the field and one at the stationhouse." *See id.*

First, while it is true that officers in *Lafayette*—the Supreme Court case establishing the inventory search exception for objects found on an arrestee's person—conducted the inventory search in the station house, nothing about that case requires officers to conduct such searches in a particular place. *See Lafayette*, 462 U.S. at 641-42; *Colorado v. Bertine*, 479 U.S. 367, 373 (1987) ("Our opinion in *Lafayette*, however, did not suggest that the station-house setting of the inventory search was critical to our holding in that case."); *see also United States v. Mendez*, 315 F.3d 132, 137 n. 3 (2nd Cir. 2002) ("[T]he Fourth Amendment does not require that police conduct inventory searches at any particular location[.]"); *United States v. Evans*, 937 F.2d 1534, 1539 (10th Cir. 1991) ("[T]he search was not invalidated because it was not done at the police station."). In *Bertine*, for

11

example, the Supreme Court noted that the primary concern courts ought to look for in determining the validity of an inventory search is whether the government "acted in bad faith or for the sole purpose of investigation." 479 U.S. at 372. So long as an inventory search achieves legitimate, non-investigatory interests such as "protect[ing] an owner's property while it is in the custody of the police, [insuring] against claims of lost, stolen, or vandalized property, and [guarding] the police from danger," the search is valid under the Fourth Amendment. *See id.*

Officer Soto's testimony shows that officers acted with a legitimate, non-investigatory purpose: not only did he testify that the police department had a standard policy of conducting an inventory search on scene to prevent weapons or contraband from entering the booking place, but he also testified that it would not be possible for officers to simply leave the backpack unaccompanied with the motorcycle. Docket 67 at 14-15, 28-29. The court finds this conclusion reasonable because, at least for places easily accessible to the public, leaving an item unattended could cause safety risks or leave it susceptible to being stolen. *Cf. United States v. Allen*, 713 F.3d 382, 388 (8th Cir. 2013) ("The officer explained that since both Allen and Dean were arrested at the scene, the items on the luggage cart would have been taken to the police station for safekeeping and inventoried to guard against loss or theft.").

Additionally, Gay's suggestion that the government cannot have "two bites at the apple" misunderstands the purpose of the Sioux Falls Police Department's policy. Officer Soto testified that it is standard procedure to conduct a preliminary inventory search on scene for the main purpose of preventing contraband or firearms from entering the stationhouse. Docket 67 at 23, 29. Once at the station,

the inventory protocol involves cataloging all of the arrestee's items that the arrestee enters the facility with and does not include items that officers seized at the scene. *See id.* at 24. The court finds this policy to be reasonable, because conducting an inventory of the items that go with the arrestee helps prevent theft of the arrestee's items and it prevents arrestees from later falsely claiming the police department or jail stole any of the arrestee's items. Even if there were a less intrusive way to conduct such an inventory search, "[t]he reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative 'less intrusive' means." *Lafayette*, 462 U.S. at 647. Thus, the court finds that officers properly conducted an inventory search of Gay's backpack on scene. Officers did not violate Gay's Fourth Amendment rights. The court overrules Gay's sixteenth objection.

## IV.   Inevitable Discovery

Lastly, Gay objects to the Report's conclusion that the inevitable discovery doctrine applies. *See* Docket 63 at 6. When officers discover information after police violate the Fourth Amendment, the evidence should not be suppressed if the government can "establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means[.]" *See Nix. v. Williams*, 467 U.S. 431, 444 (1984). Allowing the government to admit fruits of an illegal search in this situation prevents putting officers in a "worse position" than they would have been in, because officers would have discovered the evidence eventually without violating the Fourth Amendment. *See id.*

The Eighth Circuit has been less than clear on what precisely the

13

Government must show for the inevitable discovery doctrine to apply. *See United States v. Baez*, 983 F.3d 1029, 1038-39 (outlining the circuit's inconsistent approaches). As explained in *United States v. Baez*, one strand of cases requires only that the Government show that "the evidence would have been acquired lawfully but for the constitutional violation." *See id.* at 1038. But in *United States v. Conner*, 127 F.3d 663, 667 (8th Cir. 1997), the Eighth Circuit held that the inevitable-discovery doctrine applies only if the government shows 1) "that the evidence would have been discovered by lawful means in the absence of police misconduct" *and* 2) "that the government was actively pursuing a substantial, alternative line of investigation at the time of the constitutional violation." The Eighth Circuit has been "inconsistent" with which test to apply. *See Baez*, 983 F.3d at 1039.

If the inevitable discovery doctrine simply requires that the Government show that "the evidence would have been acquired lawfully but for the constitutional violation[,]" then it would apply in this case. *See Baez*, 983 F.3d at 1038. Officer Soto testified that he brought Gay's backpack to the jailhouse. *See* Docket 67 at 14, 24-25. Even without the on-scene search, Officer Soto would have brought the bag to the jailhouse, in which case officers would have conducted a standard inventory search and discovered the firearm.

But if the *Conner* test applies, the Government has not properly established the second requirement, namely "that the government was actively pursuing a substantial, alternative line of investigation at the time of the constitutional violation." *Conner*, 127 F.3d at 667. To meet this second requirement, the Government must show some "concrete evidence that police explored any

14

alternative investigatory approach[.]" *Id.* at 668. When applying the *Conner* test, the Eighth Circuit has found this bar to be a relatively low one. *See, e.g.*, *Baez*, 983 F.3d at 1040 (requirement met when officer's testimony implied that he "was at least disposed to execute an alternative plan if [defendant's wife] refused to consent, even if he did not consciously have such a plan in mind[]"); *United States v. Trogdon*, 2022 WL 2093858 at *2 (8th Cir. 2022) (requirement met when officer testified "he could have obtained a warrant but did not do so because of the time involved and because he had probable cause to search the backpack incident to arrest[]"); *United States v. Hammons*, 152 F.3d 1025, 1030 (8th Cir. 1998) (requirement met when the officers had in mind "an alternative plan" that they would have executed if the constitutional violation had not occurred). But in all of those cases, the Government at the very least demonstrated some other independent avenue that officers could have explored.

      Here, although Officer Soto testified that he brought Gay's backpack to the jailhouse—and thus *Conner's* first prong is satisfied—Officer Soto did not testify about any "alternative investigatory approach." *Conner*, 127 F.3d at 668. Nor could he have, because he admitted—and the court agrees—that there was no probable cause to believe he would find evidence of contraband or a crime inside Gay's bag. Docket 67 at 22-23. Indeed, the inventory search doctrine "does not rest on probable cause." *Lafayette*, 462 U.S. at 643. Furthermore, this case does not involve any other independent investigation into Gay, which would have inevitably circled back to his backpack. *See United States v. Durrant*, 730 F.2d 1180, 1185 (8th Cir. 1984) (applying inevitable discovery doctrine in bank robbery case to defendant's unlawfully acquired confession that he drove a blue Oldsmobile during

interrogation for an unrelated offense because officers would have discovered defendant drove a blue Oldsmobile by tracing the driver's license and traffic citation that they had obtained from the defendant when he was arrested for bank robbery). Thus, if the *Conner* test controls, the court would sustain Gay's seventeenth objection. But because the Eighth Circuit has taken "inconsistent" approaches, and because the court finds the inventory search applies, the court need not decide whether the inevitable discovery doctrine applies. The court thus overrules Gay's seventeenth objection as moot.

## CONCLUSION

The court adopts Magistrate Judge Duffy's recommendation as modified and denies Gay's motion to suppress. Thus, it is

ORDERED that the Report and Recommendation (Docket 62) denying Gay's motion to suppress is adopted as modified by this opinion. The motion to suppress (Docket 55) is denied.

Dated November 2, 2022.

                                          BY THE COURT:

                                          /s/ *Karen E. Schreier*
                                          KAREN E. SCHREIER
                                          UNITED STATES DISTRICT JUDGE